**William COMBEST, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–96–00085–CR.**

Court of Appeals of Texas,
Austin.

Aug. 28, 1997.

Erik S. Goodman, Austin, for Appellant.

Marcos Hernandez, Jr., Criminal District Attorney, Wes H. Mau, Assistant Criminal District Attorney, San Marcos, for Appellee.

Before POWERS, KIDD and DALLY *, JJ.

CARL E.F. DALLY, Justice (Retired).

Appellant William Combest entered a nolo contendre plea and was convicted of the misdemeanor offense of driving a motor vehicle in a public place while intoxicated. *See* Act of May 27, 1983, 68th Leg., R.S., ch. 303 § 3, 1983 Tex. Gen. Laws 1568, 1575 (Tex.Rev. Civ. Stat. Ann. art. 6701*l*–1 (b), since amended and codified at Tex. Penal Code Ann. § 49.04 (West 1994 and Supp.1997)). The trial court assessed appellant's punishment at confinement in the county jail for 180 days and a fine of $600. The period of confinement was suspended and appellant was placed on community supervision for two years. In his sole point of error on appeal, appellant asserts that the trial court erred in refusing to suppress evidence obtained from an analysis of his blood because the blood was unlawfully seized in violation of his constitutional rights. We will overrule appellant's point of error and affirm the trial court's judgment.

The evidence admitted on the hearing of appellant's motion to suppress will be summarized. On January 30, 1994, Trooper Daryl White responded to a call concerning a two vehicle head-on collision. Appellant suffered injuries to his face and hand and was bleeding. Trooper White talked to appellant and detected an odor of alcohol and observed his bloodshot eyes. Appellant, however, responded appropriately to Trooper White's questions. Due to appellant's injuries, Trooper White did not have him perform any sobriety tests. Appellant was not placed under arrest and was treated at Central Texas Medical Center. At the hospital Trooper White asked appellant if he would give a specimen of his blood for analysis. Trooper White gave appellant *Miranda* warnings and

read appellant the DWI statutory warning (DIC–24). The DWI statutory warning advises a person that he has been placed under arrest for driving while intoxicated and that a refusal to submit to a taking of blood will result in an automatic license suspension and may be admissible as evidence against the person in court. Trooper White also had appellant sign a DPS consent form that states that the person consenting to give the blood specimen has been placed under arrest. After appellant gave a blood specimen, Trooper White told him that a determination of whether to issue an arrest warrant would be made after an analysis of the blood specimen. Trooper White explained to appellant that if he passed the test "he probably would not hear from me on it." Trooper White admitted that he hadn't made any determination of whether appellant was intoxicated and wanted to wait for the blood test results. Trooper White used the DIC–24 statutory warning to obtain appellant's blood because he did not have an equivalent form for use in a non-arrest situation. Appellant did not testify.

■ Appellant and the State both agree, and the record affirms, appellant was not under arrest nor in custody at the time he consented to give the blood specimen. Because appellant was not under arrest when he gave the blood specimen, the statutory implied consent provision for taking a blood specimen was not applicable. *See* Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 4, 1983 Tex. Gen. Laws 1568, 1577 (Tex.Rev. Civ.Stat.Ann. art. 6701*l*–5, § 1, 2(a)(b) since amended and codified at Tex. Transp. Code Ann. § 724.011–724.019 (West Supp.1997)); *Aliff v. State,* 627 S.W.2d 166, 168 (Tex.Crim. App.1982); *Nottingham v. State,* 908 S.W.2d 585, 589 (Tex.App.—Austin 1995, no pet.). The State urges that the blood specimen obtained from appellant without a warrant was lawfully obtained because appellant gave his consent.

■ The taking of a blood specimen is considered a search and seizure within the

* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See*

Tex. Gov't Code Ann. § 74.003(b) (West 1988).

meaning of the Fourth Amendment to the United States Constitution. *Schmerber v. California*, 384 U.S. 757, 769, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966); *Aliff*, 627 S.W.2d at 168–69. Both federal and state constitutions prohibit unreasonable searches and seizures. *Juarez v. State*, 758 S.W.2d 772, 775 (Tex.Crim.App.1988); *State v. Comeaux*, 786 S.W.2d 480, 483 (Tex.App.—Austin 1990), *aff'd*, 818 S.W.2d 46 (Tex.Crim.App. 1991). A warrantless search is per se unreasonable subject to only a few exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Reyes v. State*, 741 S.W.2d 414, 430 (Tex.Crim.App. 1987). Consent for a search is an exception to the requirement for a warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Roth v. State*, 917 S.W.2d 292, 299 (Tex.App.—Austin 1995, no pet.).

■ Whether consent to a search is in fact voluntary and not the product of duress and coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. at 218, 93 S.Ct. at 2041; *Dubose v. State*, 915 S.W.2d 493, 496 (Tex. Crim.App.1996). The standard of proof which Texas courts have applied in determining whether consent is voluntary is proof by clear and convincing evidence. *See, e.g., Dubose*, 915 S.W.2d at 496; *Roth*, 917 S.W.2d at 300. However, the Supreme Court has held that the prosecution's burden of proof in a suppression hearing to determine voluntariness of consent to search is by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974). The United States Court of Appeals for the Fifth Circuit overruled prior cases and adopted the preponderance of the evidence standard of proof in suppression hearings to determine the voluntariness of consent to search. *United States v. Hurtado*, 905 F.2d 74, 75 (5th Cir.1990). (en banc).

■ The trial court has broad discretion in ruling on pretrial matters to determine whether evidence is admissible and whether to suppress the results of a search is committed to the trial court's discretion. *Dubose*, 915 S.W.2d at 496–97; *Comeaux*, 786 S.W.2d at 481–82; *State v. Carr*, 774 S.W.2d 379, 380 (Tex.App.—Austin 1989, no pet.). In reviewing a trial court's ruling on a motion to suppress evidence, an appellate court will not reverse that decision absent a clear showing that the trial court abused its discretion. *Erdman v. State*, 861 S.W.2d 890, 896 (Tex. Crim.App.1993); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App.1991); *Comeaux*, 786 S.W.2d at 482.

■ Appellant gave written consent to the search. Therefore, the pivotal issue before the trial court at the suppression hearing was whether appellant's written consent to give a specimen of his blood was voluntary. The "Police Officer D.W.I Statutory Warning" form DIC–24 that Trooper White read to appellant was not appropriate for use when appellant was not under arrest. Although appellant was not under arrest, the form read to him stated that he was under arrest. Also, that form stated that appellant's refusal to give a specimen of his blood for analysis would result in the suspension of his drivers license for ninety days and that in any subsequent prosecution his refusal might be admissible. After the warning was read to appellant he signed a "Subject's Consent Form" which also stated that appellant had been placed under arrest for driving a motor vehicle on a public highway while intoxicated. Appellant contends that even though he was not under arrest, the language of these forms brought "great psychological pressure to bear upon the decision to give a blood specimen." Moreover, appellant argues that the language of these forms that misstated the consequences of his refusal to give a blood specimen was so coercive that his consent was not voluntary.

"[I]t is not the presence of a coercive factor which makes consent involuntary but rather that the consent was given as a result of the coercion." *Dubose*, 915 S.W.2d at 497 n. 6. The wording of the forms that Trooper White used in inappropriate circumstances might be considered a coercive factor, but there is no evidence in the record that appellant's consent was given as a result of the wording of these forms. Trial counsel's ar-

gument that the use of the forms coerced appellant's consent and rendered it involuntary was based on supposition, not evidence. The trial court's rejection of appellant's argument was well within the trial court's discretion because it was conjecture not based on evidence. However, we must still determine whether the evidence before the trial court was sufficient to show appellant's consent to give the blood specimen was voluntary.

Courts and commentators have enumerated various factors, which are found within the totality of the circumstances in different cases, that should be considered in determining the voluntariness of consent searches. LaFave discusses a number of factors that bear upon the validity of consent. Among these factors are: (1) a claim of authority, (2) a show of force or coercive surroundings, (3) a threat to seek or obtain a search warrant, (4) an officer's deception of identity or purpose, (5) prior unlawful police action, (6) whether *Miranda* warnings were given, (7) whether a defendant was aware of his Fourth Amendment rights, (8) a defendant's confession or other cooperation, (9) defendant's denial of guilt, and (10) a defendant's maturity, sophistication, mental or emotional state. 3 Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment,* § 8.2, 643–713 (3d ed.1996).

▮ The United States Court of Appeals for the Fifth Circuit has settled on six factors it considers in determining the voluntariness of consent to search. They are: (1) the voluntariness of a defendant's custodial status, (2) the presence of coercive police procedures, (3) the extent and level of a defendant's cooperation with the police, (4) the defendant's awareness of his right to refuse to consent, (5) the defendant's education and intelligence, and (6) the defendant's belief that no incriminating evidence will be found. *See United States v. Brown,* 102 F.3d 1390, 1396 (5th Cir.1996); *United States v. Kelley,* 981 F.2d 1464, 1470 (5th Cir.1993); *United States v. Yeagin,* 927 F.2d 798, 800 (5th Cir.1991); *United States v. Phillips,* 664 F.2d 971, 1023–24 (5th Cir.1981). *See also United States v. Hernandez,* 93 F.3d 1493, 1500 (10th Cir.1996); *United States v. Sanchez–Valderuten,* 11 F.3d 985 (10th Cir.1993).

▮ In this case, the totality of the circumstances included a number of factors for the trial court's consideration in determining whether appellant voluntarily consented to give a specimen of his blood. The trial court could have found that: (1) the evidence did not support appellant's claim that the wording of the forms coerced his consent; (2) appellant believed the blood analysis would show he was not intoxicated; (3) appellant was not under arrest or in custody; (4) appellant was cooperative; (5) the officer did not claim to have, nor threaten to obtain, a search warrant; (6) there was no evidence of physical force; (7) there was no evidence and no claim that appellant was immature, uneducated, or unsophisticated; (8) appellant knew the purpose of the blood analysis; and (9) appellant made no claim he was unaware of his Fourth Amendment rights. We conclude that the trial court did not abuse its discretion in finding by clear and convincing evidence that appellant's consent to furnish a specimen at his blood for analysis was voluntary. The trial court did not err in overruling appellant's motion to suppress evidence of the results of the analysis of a specimen of appellant's blood. Appellant's point of error is overruled.

Because appellant has combined both federal and state claims that his blood was unlawfully obtained in the same point of error, we have not reviewed his state claim. *See Lawton v. State,* 913 S.W.2d 542, 558 (Tex.Crim.App.1995); *Robinson v. State,* 851 S.W.2d 216, 222 n. 4 (Tex.Crim.App.1991); *Riordan v. State,* 905 S.W.2d 765, 772 n. 6 (Tex.App.—Austin 1995, no pet.); *Martinets v. State,* 884 S.W.2d 185, 188–89 (Tex.App.— Austin 1994, no pet.).

The judgment of the trial court is affirmed.