833 So.2d 828 (2002)
STATE of Florida, Appellant,
v.
Foskie McCORD, Appellee.
No. 4D01-4485.
District Court of Appeal of Florida, Fourth District.
December 11, 2002.
Rehearing Denied January 16, 2003.
*829 Richard E. Doran, Attorney General, Tallahassee, and Judy Hyman, Assistant Attorney General, West Palm Beach, for appellant.
Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, West Palm Beach, for appellee.
WARNER, J.
The state appeals an order granting a motion to suppress DNA evidence taken from the defendant by means of police trickery. The trial court held that the defendant did not freely and voluntarily consent to the search of his body when he gave saliva samples. We affirm the trial court's ruling.
Detective Brian Cahir, assigned to investigate twenty-two separate armed robberies in the Lake Worth and Palm Beach areas, focused his attention on Foskie McCord, appellant, as a possible suspect. In a majority of the robberies, bricks were used to smash the front doors of the convenience stores at gas stations. McCord became a suspect when he was stopped with a brick and bag while allegedly casing an Amoco gas station.
The detective followed McCord around town hoping to catch him committing a criminal violation. When McCord was in county jail, having been arrested on unrelated charges, the detective met with McCord, advised him of his Miranda rights, and told him that he was a suspect in a rape case. He told McCord that the rape had occurred at the same location of McCord's car on a certain date. The detective convinced McCord to provide a saliva sample when he told McCord it could exclude him from the rape investigation. The detective wanted the sample to make a DNA comparison with blood recovered at the scene of one of the robberies. At no time did the detective mention that McCord was a suspect in any armed robberies.
After having been charged in the robberies, McCord moved to suppress the DNA evidence obtained from the saliva samples on the ground that his consent was involuntary and obtained in violation of his due process rights as a result of the detective's deceitful tactics. At the suppression hearing, the detective acknowledged that the sexual battery never occurred, that McCord was never a suspect, and that he completely fabricated the story to obtain McCord's consent. Indeed, the detective admitted he believed McCord consented only because he wanted to clear his name in the fictional rape case.
The state contended that trickery did not render the consent invalid because McCord clearly was not coerced and voluntarily gave his consent to secure the samples. Because the saliva sample was taken upon the "premise of a fictitious rape to which the detective knew was non-existent," the court determined that McCord involuntarily consented and suppressed the evidence, prompting this appeal.
A warrantless search does not violate the Fourth Amendment if the search is *830 conducted pursuant to a consent freely and voluntarily given. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To determine whether a consent is voluntary, the totality of circumstances must be examined. See id. at 227, 93 S.Ct. 2041; accord Washington v. State, 653 So.2d 362, 364 (Fla.1994). Those circumstances include whether the person is detained; the length of the detention; any subtly, coercive police questions; the education, intelligence, and possible vulnerable subjective state of the person; and the lack of effective warnings. See Schneckloth, 412 U.S. at 226, 229 and 248, 93 S.Ct. 2041. A detective's misrepresentations as to the nature of the investigation may provide evidence of coercion. See United States v. Briley, 726 F.2d 1301, 1304 (8th Cir.1984). A critical factor in this case is whether the officer's deception undermined the voluntariness of McCord's consent.
In the context of obtaining a confession, the use of police trickery may result in the exclusion of the confession depending upon the level of trickery employed. See Thomas v. State, 456 So.2d 454, 458 (Fla.1984). For instance, in Frazier v. Cupp, 394 U.S. 731, 737-38, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), the defendant, a suspect in a murder case, was read his rights and brought in for questioning. After officers misrepresented to him that his cousin had confessed to the killings, the defendant confessed. Emphasizing the totality of the circumstances, the court held the officer's misrepresentation was insufficient to render the confession inadmissible. See id. at 739, 89 S.Ct. 1420. Unlike McCord, however, the defendant knew he was being questioned about the murder and that his cousin's statements related to that murder.
Similarly, in Washington, the defendant was a suspect in both a murder case and an unrelated rape case. The officers interviewed the defendant with respect to the rape case, read him his Miranda rights, and obtained his consent to take hair and blood samples by telling him that it would prove or disprove his guilt in the rape case. Washington, 653 So.2d at 363-64. The officers then compared the samples with the evidence in the murder case. The officers, however, were never untruthful with the defendant. They simply did not tell him that they also could use the samples in the murder case. The supreme court held that once the samples were validly obtained in connection with the rape case, the officers were not precluded from using that evidence in the murder case. See id. at 364.
Unlike the officers in Frazier and Washington, who did not lie to the defendants regarding the crimes for which they were suspects, the detective in this case fabricated a rape charge to obtain McCord's consent. Even the detective testified that McCord consented to giving a sample only because he wanted to clear his name in a non-existent case. We agree with the trial court that this deception, while McCord was in jail, was so manipulative that his "consent" did not "validate the search."
Finally, the state argues that we should follow United States v. Andrews, 746 F.2d 247, 250-51 (5th Cir.1984), overruled on other grounds by U.S. v. Hurtado, 905 F.2d 74 (5th Cir.1990), wherein a court upheld trickery to elicit the defendant's consent. In Andrews, a federal agent, with a search warrant, naming the defendant, detained the defendant in his motel room but told him he was not under arrest. The agent read the defendant his Miranda rights, and the defendant agreed to talk. The agent asked the defendant, a convicted felon, if he had any guns. The defendant acknowledged that he had guns at *831 home. This in itself was a crime, for which the agent intended to charge the defendant, but he never advised the defendant of that purpose. Instead, he misled the defendant by telling him a person fitting his description had been connected to various robberies in which a sawed-off shotgun was used. The agent asked to inspect the defendant's shotguns. Driving his own vehicle while the officers followed, the defendant went to his home and produced the guns. The court affirmed the denial of the motion to suppress on the ground that the defendant's consent had been voluntarily given. Examining the totality of circumstances, the court noted that the defendant was never under arrest and that he drove alone in his own vehicle. See id. at 251. While the agent may have misled the defendant regarding the crime he was investigating, there was no evidence to suggest that the defendant's will was overborne. See id.
The state's reliance on Andrews is misplaced. While the court found that trickery was used, the defendant freely admitted to the possession of a firearm before the officer made up his story about the robberies. Unlike the defendant in Andrews, McCord was in county jail, was never out of the presence of police, and the fictitious rape was used to induce the consent to search.
For these reasons we affirm the trial court's ruling.
HAZOURI, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I concur in the majority opinion, but I find the analysis to be difficult because of the different focus that applies in the coerced confession cases.
In Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court held that the voluntariness of defendant's consent to search is to be analyzed by a voluntariness test "essentially like that which had been used by the Court for years in the coerced confession cases." WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.2 (3d ed.1996).
In coerced confession cases, police deception has not been deemed to compel the exclusion of statements given after the misrepresentation. Thus, in Burch v. State, 343 So.2d 831, 832-33 (Fla.1977), the police convinced a defendant to take a pretended polygraph examination and then falsely informed him that he had failed the test. The supreme court held that under the totality of the circumstances the confession was admissible, pointing to the absence of "physical coercion common to confessions deemed invalidated." Id. at 833. In State v. Manning, 506 So.2d 1094 (Fla. 3d DCA 1987), the third district found a confession to be voluntary notwithstanding the police misrepresentation to the defendant concerning his medical records. The difference between the confession cases and consent to search cases appears to be that in the confession cases the supreme court places greater emphasis on whether the police deception has rendered confessions "unreliable." See Escobar v. State, 699 So.2d 984, 987 (Fla.1997), abrogated on other grounds, Connor v. State, 803 So.2d 598, 607 (Fla.2001).
The bottom line in this consent case is, as Professor LaFave has written, that the test the court has applied is "to ask if the deception is `fair,' ... the question which must be asked under the Schneckloth formulation." LAFAVE, § 8.2(n). As the Court noted in Schneckloth:
there is no "ready definition of the meaning of `voluntariness'"; rather, that term merely reflects an accommodation *832 between the need for effective enforcement of the criminal law and "society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness."
LAFAVE, § 8.2(n) (quoting Schneckloth, 412 U.S. at 224-25, 93 S.Ct. 2041). I agree with the majority that United States v. Andrews, 746 F.2d 247 (5th Cir.1984), does not control this case. There are factual differences in Andrews which are not present here. In a totality of the circumstances analysis, it is the circumstances which distinguish the cases on a case-by-case basis.